UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALESSANDRO GAJANO,

                        Plaintiff,

       - - against - -

NORDDEUTSCHE LANDESBANK GIROZENTRALE,

                        Defendant.
------------------------------------------------------------------------X

**AMENDED COMPLAINT**
Case No.: 1:08-CV-161 (MGC)

      Plaintiff ALESSANDRO GAJANO, by his attorneys, Law Office of Mark E. Goidell, Esq., as and for his Amended Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.     This action is brought by plaintiff, a former Senior Vice President and Treasurer of Norddeutsche Landesbank Girozentrale (the "Bank" or "defendant"), alleging breach of contract and related claims arising from the defendant's failure to pay plaintiff bonuses to which he is entitled, and alleging violations of the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U.S.C. § 1000 *et seq.*, arising primarily from the denial of vested pension benefits to plaintiff.

## THE PARTIES

2.     At all times relevant herein, plaintiff Alessandro Gajano was and is a resident of the State of New Jersey.

3.     Upon information and belief, at all times relevant herein, the Bank was and is a German bank authorized to conduct the business of banking in the State of New

York, with its principal place of business within the State of New York located at 1114 Avenue of the Americas, County of New York, State of New York.

**FACTUAL ALLEGATIONS**

4. In July 2001, plaintiff was hired by the defendant in the position of Senior Vice President and Treasurer at the defendant's New York branch, and plaintiff commenced his employment with defendant in September 2001.

5. Plaintiff's job duties and responsibilities included the growth and development of investment banking and new products in capital markets.

6. The plaintiff and defendant agreed that plaintiff's annual base salary would be $220,000.00, and that his compensation would consist, *inter alia*, of his salary and two bonuses, payable respectively in December and the following February of each year of his employment, later changed to March.

7. Plaintiff was induced to accept employment with defendant based in part upon material representations during the interview process that he would be paid substantial annual total compensation by defendant consistent with the practice of defendant and industry practice, which would include his base salary and the two bonuses described above.

8. Defendant represented to plaintiff that his annual bonuses would be determined primarily by the defendant's financial results and plaintiff's contributions thereto, and would be comprised of a holiday bonus equal to one-month base compensation payable in December of each year of his employment, and a more substantial performance-based bonus payable in the February or March following each year of

his employment.

9. Plaintiff justifiably relied upon these representations in deciding to accept and remain in employment with defendant.

10. At the defendant bank and throughout the industry in general, it is well known that the payment of bonuses to bank employees with plaintiff's duties and responsibilities is an integral portion of a professional's total compensation, and bonus payments, determined by a fair and consistent basis, are an implied and/or express contractual right of plaintiff and those similarly situated.

11. Following the commencement of his employment, the performance of plaintiff and his department was excellent as measured by all objective standards. Plaintiff received excellent performance reviews throughout his employment with defendant, and received his December bonus and his performance-based bonus for each of his employment years of 2001, 2002, 2003 and 2004, and his December bonus for the year 2005, consistent with the policy of the defendant and industry practice.

12. The defendant's profits in capital markets achieved record results in 2005, largely as the result of the plaintiff's contributions, and the plaintiff was asked by defendant during 2005 to submit his resume and application for promotion to branch co-manager for the defendant's New York branch.

13. As a result of the profits generated by plaintiff and his department, December and performance-based bonuses were paid for each of the years 2001, 2002, 2003, 2004, 2005 and 2006 to similarly situated bank employees, including those employed in plaintiff's department, consistent with the policy of the defendant and industry

practice.

14. Plaintiff was not paid a performance-based bonus for the year 2005 nor the December bonus for the year 2006.

15. On January 13, 2006, plaintiff was given notice of the termination from his employment by the defendant, effective January 13, 2007. Although his termination was not to be effective until one year following the notice provided by the defendant to the plaintiff, defendant refused to permit plaintiff to return to his office following the notice of his termination.

16. During plaintiff's employment with defendant, defendant initiated and maintained a severance policy whereby terminated employees were to be paid an amount equal to three weeks' base salary for every year of employment with defendant.

17. Defendant failed to pay to plaintiff the bonuses and severance payment to which he is entitled pursuant to the severance policy of the defendant following his termination from employment.

### FIRST CLAIM FOR RELIEF

18. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "17" hereof as if fully set forth at length herein.

19. The failure and refusal of the defendant to pay the performance-based bonus to the plaintiff for the 2005 year of plaintiff's employment, to pay to the plaintiff the December bonus for the year 2006, and/or to pay plaintiff in accordance with defendant's severance policy, constitute breaches of its express and/or implied contract with plaintiff, entitling plaintiff to an award in an amount to be established

at the trial of this action, but believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## SECOND CLAIM FOR RELIEF

20. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "19" hereof as if fully set forth at length herein.

21. As an aggrieved employee of defendant, plaintiff may elect between suing for compensation under the terms of his employment contract or suing in *quantum meruit* for the reasonable value of the services he performed less the value of any payments received, which defendant has failed and refused to pay him. Such amount is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## THIRD CLAIM FOR RELIEF

22. Plaintiff repeats and reiterates the allegations contained in paragraphs "l" through "21" hereof as if fully set forth at length herein.

23. Defendant's representations to plaintiff concerning the total compensation to be paid to its employees generally, and to plaintiff specifically, were erroneous and false when made.

24. Plaintiff justifiably relied to his detriment on such intentional, reckless and/or negligent misrepresentations of material facts.

25. Defendant's conduct constitutes fraud and/or negligent misrepresentation, which has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs

and disbursements.

## FOURTH CLAIM FOR RELIEF

26. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "25" hereof as if fully set forth at length herein.

27. Alternatively, even if it were to be found that there was no express or implied agreement between plaintiff and defendant, plaintiff is nonetheless entitled to appropriate relief under the theory of unjust enrichment and/or restitution as (a) defendant has denied him the bonuses he earned and severance pay to which he is entitled; (b) plaintiff has enriched defendant with his services; and (c) plaintiff reasonably relied on receiving fair bonus payments from defendant as he had historically received and/or been promised.

28. Defendant's conduct has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## FIFTH CLAIM FOR RELIEF

29. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "28" hereof as if fully set forth at length herein.

30. Upon information and belief, the defendant's severance plans, practices and policies constitute an employee benefit plan under ERISA.

31. Plaintiff is entitled to severance benefits pursuant to the most favorable severance arrangement applicable to him, which the defendant improperly withheld.

32. ERISA also allows for the recovery of "reasonable attorney's fees and costs" in an

action to recover benefits, including severance payments. 29 U.S.C. §1132(g)(1).

33. Plaintiff is therefore entitled to payment of appropriate severance pay, together with interest, attorneys' fees, costs and disbursements.

## SIXTH CLAIM FOR RELIEF

34. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "33" hereof as if fully set forth at length herein.

35. At all relevant times alleged herein, plaintiff was and is a "participant" or "beneficiary" as defined in ERISA of the Nord/LB Defined Benefit Pension Plan (the "Plan") established, managed, maintained and administered by the defendant.

36. At all relevant times alleged herein, the Plan was an employee benefit plan as defined by ERISA.

37. As a term and condition of his employment, plaintiff became entitled to participate in the Plan at the time of his employment, and was provided with Plan documents providing, *inter alia*, the requirements for eligibility, vesting and distribution of benefits.

38. The Plan documents provided, *inter alia*, that plaintiff would fully vest without restrictions on distributions after a period of five years following the commencement of his employment.

39. At the time of the termination of his employment, plaintiff was fully vested in the Plan by virtue of the Plan documents which defendant provided to plaintiff.

40. Following the termination of his employment with defendant, plaintiff requested that the Plan distribute to plaintiff his benefits consisting of a lump sum payment.

41. Defendant has refused to distribute to plaintiff the Plan benefits to which plaintiff is entitled under the terms and conditions of the Plan documents provided to plaintiff, and instead, has offered to pay to Plaintiff an annuity or a lump sum payment substantially lower than the lump sum payment to which plaintiff is entitled.

42. Plaintiff therefore is entitled to judgment pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

### SEVENTH CLAIM FOR RELIEF

43. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "42" hereof as if fully set forth at length herein.

44. At all times relevant herein, defendant owed to plaintiff a fiduciary duty to manage and administer the Plan in good faith and free from arbitrary or capricious decisions.

45. Defendant's refusal to pay to plaintiff the benefits owed to him under the Plan constitutes an abuse of discretion and breach of the fiduciary duties owed by the defendant to the plaintiff.

46. Plaintiff is therefore entitled to judgment to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

WHEREFORE, Judgment should be entered against the defendant in favor or the plaintiff (i) on the First, Second, Third, Fourth and Fifth Claims for Relief, in an amount to be determined, but reasonably believed to exceed the sum of $220,000.00, plus interest, his

reasonable attorney's fees, costs, and disbursements; (ii) on the Sixth and Seventh Claims for Relief, to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and for a declaration that plaintiff is entitled to benefits under the terms of the Plan; and (iii) for such other and further relief as this Court may deem just and proper.

Dated: Garden City, New York
       March 30, 2008

                                            Yours, etc.

                                            Law Office of Mark E. Goidell, Esq.
                                            By:    Mark E. Goidell, Esq. (MEG-4786)
                                            Attorneys for Plaintiff
                                            377 Oak Street, Suite 101
                                            Garden City, New York 11530
                                            (516) 683-0001
                                            Fax: (516) 222-1094

**JURY TRIAL DEMANDED**