UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

ALESSANDRO GAJANO,                    :

              Plaintiff,                :

   -against-                          :

NORDDEUTSCHE LANDESBANK               :
GIROZENTRALE,

              Defendant.

08-CV-0161 (MGC)

ECF CASE

**AFFIDAVIT OF
JOEL E. COHEN, ESQ.**

STATE OF NEW YORK   )
                     )   ss.:
COUNTY OF NEW YORK  )

      JOEL E. COHEN, being duly sworn, deposes and says:

      1.     I am duly admitted to practice law in this Court and am a member of the law firm of McDermott Will & Emery LLP, counsel for defendant Norddeutsche Landesbank Girozentrale ("Defendant"), in the above-captioned action. As such, I am fully familiar with the facts and circumstances herein. I submit this affidavit in support of Defendant's Motion To Strike Plaintiff's Demand For A Jury Trial.

      2.     Attached hereto as Exhibit 1 is a true and correct copy of the complaint in this action filed on December 19, 2007.

      3.     Attached hereto as Exhibit 2 is a true and correct copy of the amended complaint in this action filed on March 31, 2008.

      4.     Attached hereto as Exhibit 3 is a true and correct copy of the civil docket in this action.

      5.     Attached hereto as Exhibit 4 are true and correct copies of the unreported cases cited in Defendant's Memorandum Of Law In Support Of Its Motion To Strike Plaintiff's Demand For A Jury Trial.

WHEREFORE, the undersigned respectfully requests that this Court grant Defendant's Motion To Strike Plaintiff's Demand For A Jury Trial.

Joel E. Cohen

Sworn to before me this
14th day of April 2008

Notary Public

**KATHERINE KALE**
**NOTARY PUBLIC, STATE OF NEW YORK**
**NO. 02KA6171651**
**QUALIFIED IN NEW YORK COUNTY**
**COMMISSION EXPIRES JULY 30, 2011**

NYK 1155930-1.041332.0354

- 2 -

EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ALESSANDRO GAJANO,

                Plaintiff,

        - - against - -

NORDDEUTSCHE LANDESBANK GIROZENTRALE,

                Defendant.
-------------------------------------------------------------------X

Index No. 07-604145

Date of Filing: 12/19/07

Plaintiff designates New York
County as the place of trial.

The basis of venue is defendant's
residence.

**SUMMONS**
Plaintiff resides at:
4 Lenape Trail
Chatham, New Jersey 07928

**TO THE ABOVE-NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiffs attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:  Garden City, New York
         December 18, 2007

LAW OFFICE OF MARK E. GOIDELL, ESQ.

By: _____
Mark E. Goidell, Esq.
Attorneys for Plaintiff
377 Oak Street, Suite 101
Garden City, New York 11530
(516) 683-0001

NEW YORK
COUNTY CLERK'S OFFICE

DEC 19 2007

NOT COMPARED
WITH COPY FILE

**TO:**
Norddeutsche Landesbank Girozentrale
1114 Avenue of the Americas
New York, New York 10036

SERVICE
COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------X

ALESSANDRO GAJANO,

Plaintiff,

**COMPLAINT**
Index No.:

- - against - -

NORDDEUTSCHE LANDESBANK GIROZENTRALE,

Defendant.
---------------------------------------------------------------------X

Plaintiff ALESSANDRO GAJANO, by his attorneys, Law Office of Mark E. Goidell,

Esq., as and for his Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

1.    This action is brought by plaintiff, a former Senior Vice President and Treasurer of

Norddeutsche Landesbank Girozentrale (the "Bank" or "defendant"), alleging breach

of contract and related claims arising from the defendant's failure to pay plaintiff

bonuses to which he is entitled, and alleging violations of the Employee Retirement

Income Securities Act of 1974 ("ERISA"), 29 U.S.C. § 1000 *et seq.*, arising primarily

from the denial of vested pension benefits to plaintiff.

**THE PARTIES**

2.    At all times relevant herein, plaintiff Alessandro Gajano was and is a resident of the

State of New Jersey.

3.    Upon information and belief, at all times relevant herein, the Bank was and is a

German bank authorized to conduct the business of banking in the State of New

York, with its principal place of business within the State of New York located at

1114 Avenue of the Americas, County of New York, State of New York.

**FACTUAL ALLEGATIONS**

4.    In July 2001, plaintiff was hired by the defendant in the position of Senior Vice President and Treasurer at the defendant's New York branch, and plaintiff commenced his employment with defendant in September 2001.

5.    Plaintiff's job duties and responsibilities included the growth and development of investment banking and new products in capital markets.

6.    The plaintiff and defendant agreed that plaintiff's annual base salary would be $220,000.00, and that his compensation would consist, *inter alia*, of his salary and two bonuses, payable respectively in December and the following February of each year of his employment, later changed to March.

7.    Plaintiff was induced to accept employment with defendant based in part upon material representations during the interview process that he would be paid substantial annual total compensation by defendant consistent with the practice of defendant and industry practice, which would include his base salary and the two bonuses described above.

8.    Defendant represented to plaintiff that his annual bonuses would be determined primarily by the defendant's financial results and plaintiff's contributions thereto, and would be comprised of a holiday bonus equal to one-month base compensation payable in December of each year of his employment, and a more substantial performance-based bonus payable in the February or March following each year of his employment.

2

9.  Plaintiff justifiably relied upon these representations in deciding to accept and remain in employment with defendant.

10. At the defendant bank and throughout the industry in general, it is well known that the payment of bonuses to bank employees with plaintiff's duties and responsibilities is an integral portion of a professional's total compensation, and bonus payments, determined by a fair and consistent basis, are an implied and/or express contractual right of plaintiff and those similarly situated.

11. Following the commencement of his employment, the performance of plaintiff and his department was excellent as measured by all objective standards.   Plaintiff received excellent performance reviews throughout his employment with defendant, and received his December bonus and his performance-based bonus for each of his employment years of 2001, 2002, 2003 and 2004, and his December bonus for the year 2005, consistent with the policy of the defendant and industry practice.

12. The defendant's profits in capital markets achieved record results in 2005, largely as the result of the plaintiff's contributions, and the plaintiff was asked by defendant during 2005 to submit his resume and application for promotion to branch co-manager for the defendant's New York branch.

13. As a result of the profits generated by plaintiff and his department, December and performance-based bonuses were paid for each of the years 2001, 2002, 2003, 2004, 2005 and 2006 to similarly situated bank employees, including those employed in plaintiff's department, consistent with the policy of the defendant and industry practice.

3

14.    Plaintiff was not paid a performance-based bonus for the year 2005 nor the December

bonus for the year 2006.

15.    On January 13, 2006, plaintiff was given notice of the termination from his

employment by the defendant, effective January 13, 2007. Although his termination

was not to be effective until one year following the notice provided by the defendant

to the plaintiff, defendant refused to permit plaintiff to return to his office following

the notice of his termination.

16.    During plaintiff's employment with defendant, defendant initiated and maintained

a severance policy whereby terminated employees were to be paid an amount equal

to three weeks' base salary for every year of employment with defendant.

17.    Defendant failed to pay to plaintiff the bonuses and severance payment to which he

is entitled pursuant to the severance policy of the defendant following his termination

from employment.

## FIRST CLAIM FOR RELIEF

18.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through

"17" hereof as if fully set forth at length herein.

19.    The failure and refusal of the defendant to pay the performance-based bonus to the

plaintiff for the 2005 year of plaintiff's employment, to pay to the plaintiff the

December bonus for the year 2006, and/or to pay plaintiff in accordance with

defendant's severance policy, constitute breaches of its express and/or implied

contract with plaintiff, entitling plaintiff to an award in an amount to be established

at the trial of this action, but believed to be in excess of $220,000.00, plus interest,

4

attorney's fees, costs and disbursements.

## SECOND CLAIM FOR RELIEF

20.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "19" hereof as if fully set forth at length herein.

21.    As an aggrieved employee of defendant, plaintiff may elect between suing for compensation under the terms of his employment contract or suing in *quantum meruit* for the reasonable value of the services he performed less the value of any payments received, which defendant has failed and refused to pay him. Such amount is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## THIRD CLAIM FOR RELIEF

22.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "21" hereof as if fully set forth at length herein.

23.    Defendant's representations to plaintiff concerning the total compensation to be paid to its employees generally, and to plaintiff specifically, were erroneous and false when made.

24.    Plaintiff justifiably relied to his detriment on such intentional, reckless and/or negligent misrepresentations of material facts.

25.    Defendant's conduct constitutes fraud and/or negligent misrepresentation, which has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

5

## FOURTH CLAIM FOR RELIEF

26. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "25" hereof as if fully set forth at length herein.

27. Alternatively, even if it were to be found that there was no express or implied agreement between plaintiff and defendant, plaintiff is nonetheless entitled to appropriate relief under the theory of unjust enrichment and/or restitution as (a) defendant has denied him the bonuses he earned and severance pay to which he is entitled; (b) plaintiff has enriched defendant with his services; and (c) plaintiff reasonably relied on receiving fair bonus payments from defendant as he had historically received and/or been promised.

28. Defendant's conduct has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## FIFTH CLAIM FOR RELIEF

29. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "28" hereof as if fully set forth at length herein.

30. Upon information and belief, the defendant's severance plans, practices and policies constitute an employee benefit plan under ERISA.

31. Plaintiff is entitled to severance benefits pursuant to the most favorable severance arrangement applicable to him, which the defendant improperly withheld.

32. ERISA also allows for the recovery of "reasonable attorney's fees and costs" in an action to recover benefits, including severance payments. 29 U.S.C. §1132(g)(1).

6

33. Plaintiff is therefore entitled to payment of appropriate severance pay, together with interest, attorneys' fees, costs and disbursements.

<u>**SIXTH CLAIM FOR RELIEF**</u>

34. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "33" hereof as if fully set forth at length herein.

35. At all relevant times alleged herein, plaintiff was and is a "participant" or "beneficiary" as defined in ERISA of the Nord/LB Defined Benefit Pension Plan (the "Plan") established, managed, maintained and administered by the defendant.

36. At all relevant times alleged herein, the Plan was an employee benefit plan as defined by ERISA.

37. As a term and condition of his employment, plaintiff became entitled to participate in the Plan at the time of his employment, and was provided with Plan documents providing, *inter alia*, the requirements for eligibility, vesting and distribution of benefits.

38. The Plan documents provided, *inter alia*, that plaintiff would fully vest without restrictions on distributions after a period of five years following the commencement of his employment.

39. At the time of the termination of his employment, plaintiff was fully vested in the Plan by virtue of the Plan documents which defendant provided to plaintiff.

40. Following the termination of his employment with defendant, plaintiff submitted all documents required by the Plan to distribute his Plan benefits.

41. Defendant has refused to distribute to plaintiff the Plan benefits to which plaintiff is

7

entitled under the terms and conditions of the Plan documents provided to plaintiff.

42. Plaintiff therefore is entitled to judgment pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

### SEVENTH CLAIM FOR RELIEF

43. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "42" hereof as if fully set forth at length herein.

44. At all times relevant herein, defendant owed to plaintiff a fiduciary duty to manage and administer the Plan in good faith and free from arbitrary or capricious decisions.

45. Defendant's refusal to pay to plaintiff the benefits owed to him under the Plan constitutes an abuse of discretion and breach of the fiduciary duties owed by the defendant to the plaintiff.

46. Plaintiff is therefore entitled to judgment to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

WHEREFORE, Judgment should be entered against the defendant in favor or the plaintiff (i) on the First, Second, Third, Fourth and Fifth Claims for Relief, in an amount to be determined, but reasonably believed to exceed the sum of $220,000.00, plus interest, his reasonable attorney's fees, costs, and disbursements; (ii) on the Sixth and Seventh Claims for Relief, to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and for a declaration that plaintiff is entitled to benefits

8

under the terms of the Plan; and (iii) for such other and further relief as this Court may deem

just and proper.

Dated: Garden City, New York
          December 6, 2007

Yours, etc.

*Mark E. Goidell* (signature)

Law Office of Mark E. Goidell, Esq.
By:      Mark E. Goidell, Esq.
Attorneys for Plaintiff
377 Oak Street, Suite 101
Garden City, New York 11530
(516) 683-0001
Fax: (516) 222-1094

9

VERIFICATION

STATE OF NEW YORK )
                  )ss.:
COUNTY OF NASSAU  )

MARK E. GOIDELL, ESQ., an attorney at law, being duly sworn, deposes and says:

That I am the attorney of record for the plaintiff in the within action; I have read the foregoing SUMMONS AND COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters herein stated to be alleged on information and belief, and as to those matters I believe it to be true.

The reason this verification is made by me, and not by plaintiff is that the plaintiff does not reside in the county in which I maintain my office.

The grounds of my belief as to all matters not stated upon my knowledge, are as follows: Information supplied to me by my client.

_____
MARK E. GOIDELL

Sworn to before me this
18th day of December, 2007

_____
Notary Public

AMANDA CARLSON, ESQ.
Notary Public, State of New York
No. 02CA6155722
Qualified in Nassau County
Commission Expires Nov. 20, 2010

10

EXHIBIT 2



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALESSANDRO GAJANO,

                        Plaintiff,

                                                    **AMENDED**
                                                    **COMPLAINT**
                                                    Case No.: 1:08-CV-
                                                    161 (MGC)

        - - against - -

NORDDEUTSCHE LANDESBANK GIROZENTRALE,

                        Defendant.
-----------------------------------------------------------------------X

        Plaintiff ALESSANDRO GAJANO, by his attorneys, Law Office of Mark E. Goidell,

Esq., as and for his Amended Complaint, alleges as follows:

### PRELIMINARY STATEMENT

1.      This action is brought by plaintiff, a former Senior Vice President and Treasurer of

        Norddeutsche Landesbank Girozentrale (the "Bank" or "defendant"), alleging breach

        of contract and related claims arising from the defendant's failure to pay plaintiff

        bonuses to which he is entitled, and alleging violations of the Employee Retirement

        Income Securities Act of 1974 ("ERISA"), 29 U.S.C. § 1000 *et seq.*, arising primarily

        from the denial of vested pension benefits to plaintiff.

### THE PARTIES

2.      At all times relevant herein, plaintiff Alessandro Gajano was and is a resident of the

        State of New Jersey.

3.      Upon information and belief, at all times relevant herein, the Bank was and is a

        German bank authorized to conduct the business of banking in the State of New

York, with its principal place of business within the State of New York located at 1114 Avenue of the Americas, County of New York, State of New York.

## FACTUAL ALLEGATIONS

4.   In July 2001, plaintiff was hired by the defendant in the position of Senior Vice President and Treasurer at the defendant's New York branch, and plaintiff commenced his employment with defendant in September 2001.

5.   Plaintiff's job duties and responsibilities included the growth and development of investment banking and new products in capital markets.

6.   The plaintiff and defendant agreed that plaintiff's annual base salary would be $220,000.00, and that his compensation would consist, *inter alia*, of his salary and two bonuses, payable respectively in December and the following February of each year of his employment, later changed to March.

7.   Plaintiff was induced to accept employment with defendant based in part upon material representations during the interview process that he would be paid substantial annual total compensation by defendant consistent with the practice of defendant and industry practice, which would include his base salary and the two bonuses described above.

8.   Defendant represented to plaintiff that his annual bonuses would be determined primarily by the defendant's financial results and plaintiff's contributions thereto, and would be comprised of a holiday bonus equal to one-month base compensation payable in December of each year of his employment, and a more substantial performance-based bonus payable in the February or March following each year of

2

his employment.

9.     Plaintiff justifiably relied upon these representations in deciding to accept and remain in employment with defendant.

10.    At the defendant bank and throughout the industry in general, it is well known that the payment of bonuses to bank employees with plaintiff's duties and responsibilities is an integral portion of a professional's total compensation, and bonus payments, determined by a fair and consistent basis, are an implied and/or express contractual right of plaintiff and those similarly situated.

11.    Following the commencement of his employment, the performance of plaintiff and his department was excellent as measured by all objective standards.   Plaintiff received excellent performance reviews throughout his employment with defendant, and received his December bonus and his performance-based bonus for each of his employment years of 2001, 2002, 2003 and 2004, and his December bonus for the year 2005, consistent with the policy of the defendant and industry practice.

12.    The defendant's profits in capital markets achieved record results in 2005, largely as the result of the plaintiff's contributions, and the plaintiff was asked by defendant during 2005 to submit his resume and application for promotion to branch co-manager for the defendant's New York branch.

13.    As a result of the profits generated by plaintiff and his department, December and performance-based bonuses were paid for each of the years 2001, 2002, 2003, 2004, 2005 and 2006 to similarly situated bank employees, including those employed in plaintiff's department, consistent with the policy of the defendant and industry

3

practice.

14. Plaintiff was not paid a performance-based bonus for the year 2005 nor the December bonus for the year 2006.

15. On January 13, 2006, plaintiff was given notice of the termination from his employment by the defendant, effective January 13, 2007. Although his termination was not to be effective until one year following the notice provided by the defendant to the plaintiff, defendant refused to permit plaintiff to return to his office following the notice of his termination.

16. During plaintiff's employment with defendant, defendant initiated and maintained a severance policy whereby terminated employees were to be paid an amount equal to three weeks' base salary for every year of employment with defendant.

17. Defendant failed to pay to plaintiff the bonuses and severance payment to which he is entitled pursuant to the severance policy of the defendant following his termination from employment.

## FIRST CLAIM FOR RELIEF

18. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "17" hereof as if fully set forth at length herein.

19. The failure and refusal of the defendant to pay the performance-based bonus to the plaintiff for the 2005 year of plaintiff's employment, to pay to the plaintiff the December bonus for the year 2006, and/or to pay plaintiff in accordance with defendant's severance policy, constitute breaches of its express and/or implied contract with plaintiff, entitling plaintiff to an award in an amount to be established

4

at the trial of this action, but believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## SECOND CLAIM FOR RELIEF

20.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "19" hereof as if fully set forth at length herein.

21.    As an aggrieved employee of defendant, plaintiff may elect between suing for compensation under the terms of his employment contract or suing in *quantum meruit* for the reasonable value of the services he performed less the value of any payments received, which defendant has failed and refused to pay him. Such amount is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## THIRD CLAIM FOR RELIEF

22.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "21" hereof as if fully set forth at length herein.

23.    Defendant's representations to plaintiff concerning the total compensation to be paid to its employees generally, and to plaintiff specifically, were erroneous and false when made.

24.    Plaintiff justifiably relied to his detriment on such intentional, reckless and/or negligent misrepresentations of material facts.

25.    Defendant's conduct constitutes fraud and/or negligent misrepresentation, which has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs

and disbursements.

## FOURTH CLAIM FOR RELIEF

26.  Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "25" hereof as if fully set forth at length herein.

27.  Alternatively, even if it were to be found that there was no express or implied agreement between plaintiff and defendant, plaintiff is nonetheless entitled to appropriate relief under the theory of unjust enrichment and/or restitution as (a) defendant has denied him the bonuses he earned and severance pay to which he is entitled; (b) plaintiff has enriched defendant with his services; and (c) plaintiff reasonably relied on receiving fair bonus payments from defendant as he had historically received and/or been promised.

28.  Defendant's conduct has directly damaged plaintiff in an amount to be proven at the trial of this action, but which is believed to be in excess of $220,000.00, plus interest, attorney's fees, costs and disbursements.

## FIFTH CLAIM FOR RELIEF

29.  Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "28" hereof as if fully set forth at length herein.

30.  Upon information and belief, the defendant's severance plans, practices and policies constitute an employee benefit plan under ERISA.

31.  Plaintiff is entitled to severance benefits pursuant to the most favorable severance arrangement applicable to him, which the defendant improperly withheld.

32.  ERISA also allows for the recovery of "reasonable attorney's fees and costs" in an

action to recover benefits, including severance payments. 29 U.S.C. §1132(g)(1).

33.    Plaintiff is therefore entitled to payment of appropriate severance pay, together with interest, attorneys' fees, costs and disbursements.

### SIXTH CLAIM FOR RELIEF

34.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "33" hereof as if fully set forth at length herein.

35.    At all relevant times alleged herein, plaintiff was and is a "participant" or "beneficiary" as defined in ERISA of the Nord/LB Defined Benefit Pension Plan (the "Plan") established, managed, maintained and administered by the defendant.

36.    At all relevant times alleged herein, the Plan was an employee benefit plan as defined by ERISA.

37.    As a term and condition of his employment, plaintiff became entitled to participate in the Plan at the time of his employment, and was provided with Plan documents providing, *inter alia*, the requirements for eligibility, vesting and distribution of benefits.

38.    The Plan documents provided, *inter alia*, that plaintiff would fully vest without restrictions on distributions after a period of five years following the commencement of his employment.

39.    At the time of the termination of his employment, plaintiff was fully vested in the Plan by virtue of the Plan documents which defendant provided to plaintiff.

40.    Following the termination of his employment with defendant, plaintiff requested that the Plan distribute to plaintiff his benefits consisting of a lump sum payment.

7

41.  Defendant has refused to distribute to plaintiff the Plan benefits to which plaintiff is entitled under the terms and conditions of the Plan documents provided to plaintiff, and instead, has offered to pay to Plaintiff an annuity or a lump sum payment substantially lower than the lump sum payment to which plaintiff is entitled.

42.  Plaintiff therefore is entitled to judgment pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

### SEVENTH CLAIM FOR RELIEF

43.  Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "42" hereof as if fully set forth at length herein.

44.  At all times relevant herein, defendant owed to plaintiff a fiduciary duty to manage and administer the Plan in good faith and free from arbitrary or capricious decisions.

45.  Defendant's refusal to pay to plaintiff the benefits owed to him under the Plan constitutes an abuse of discretion and breach of the fiduciary duties owed by the defendant to the plaintiff.

46.  Plaintiff is therefore entitled to judgment to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan.

WHEREFORE, Judgment should be entered against the defendant in favor or the plaintiff (i) on the First, Second, Third, Fourth and Fifth Claims for Relief, in an amount to be determined, but reasonably believed to exceed the sum of $220,000.00, plus interest, his

8

reasonable attorney's fees, costs, and disbursements; (ii) on the Sixth and Seventh Claims for Relief, to recover the benefits due to plaintiff under the terms of the Plan, enforcing his rights under the terms of the Plan, and for a declaration that plaintiff is entitled to benefits under the terms of the Plan; and (iii) for such other and further relief as this Court may deem just and proper.

Dated: Garden City, New York
      March 30, 2008

              Yours, etc.

              _____
              Law Office of Mark E. Goidell, Esq.
              By:    Mark E. Goidell, Esq. (MEG-4786)
              Attorneys for Plaintiff
              377 Oak Street, Suite 101
              Garden City, New York 11530
              (516) 683-0001
              Fax: (516) 222-1094

**<u>JURY TRIAL DEMANDED</u>**

EXHIBIT 3

ECF

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:08-cv-00161-MGC

Gajano v. Norddeutsche Landesbank Girozentrale
Assigned to: Judge Miriam Goldman Cedarbaum
Case in other court: State Court-Supreme, 604145-07
Cause: 29:1001 E.R.I.S.A.: Employee Retirement

Date Filed: 01/08/2008
Jury Demand: Plaintiff
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Alessandro Gajano**

represented by **Mark Elliot Goidell**
Law Office of Mark E. Goidell
377 Oak Street, Suite 101
Garden City, NY 11530
(516)-683-0001
Fax: (516)-222-1094
Email: mgoidell@optonline.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Norddeutsche Landesbank
Girozentrale**

represented by **Joel Emmet Cohen**
McDermott, Will & Emery, LLP (NY)
340 Madison Avenue
New York, NY 10017
(212)-547-5566
Fax: (212)-547-5444
Email: jcohen@mwe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine Dana Kale**
McDermott, Will & Emery, LLP (NY)
340 Madison Avenue
New York, NY 10017
(212)-547-5689
Fax: (212)-547-5444
Email: kkale@mwe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 01/04/2008 | 1 | NOTICE OF REMOVAL from the Supreme Court of the State of New York, County of New York. Case Number: 604145-07. (Filing Fee $ 350.00, Receipt Number 637639).Document filed by Norddeutsche Landesbank Girozentrale.(jpo) (Entered: 01/10/2008) |
| 01/04/2008 | | Magistrate Judge Gabriel W. Gorenstein is so designated. (jpo) (Entered: 01/10/2008) |
| 01/04/2008 | | Case Designated ECF. (jpo) (Entered: 01/10/2008) |
| 01/04/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Norddeutsche Landesbank Girozentrale.(jpo) (Entered: 01/10/2008) |
| 01/15/2008 | 3 | ANSWER to Complaint. Document filed by Norddeutsche Landesbank Girozentrale.(Kale, Katherine) (Entered: 01/15/2008) |
| 01/15/2008 | 4 | CERTIFICATE OF SERVICE of Notice of Removal served on Plaintiff's Counsel on January 8, 2008. Service was made by Mail. Document filed by Norddeutsche Landesbank Girozentrale. (Kale, Katherine) (Entered: 01/15/2008) |
| 01/15/2008 | 5 | CERTIFICATE OF SERVICE of Answer served on Plaintiff's Counsel on January 15, 2008. Service was made by Mail. Document filed by Norddeutsche Landesbank Girozentrale. (Kale, Katherine) (Entered: 01/15/2008) |
| 01/31/2008 | 6 | NOTICE OF APPEARANCE by Mark Elliot Goidell on behalf of Alessandro Gajano (Goidell, Mark) (Entered: 01/31/2008) |
| 03/06/2008 | | Minute Entry for proceedings held before Judge Miriam Goldman Cedarbaum: Initial Pretrial Conference held on 3/6/2008. (djc) (Entered: 03/12/2008) |
| 03/31/2008 | 7 | DEMAND for Trial by Jury. Document filed by Alessandro Gajano (Goidell, Mark) (Entered: 03/31/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/13/2008 15:32:21 | | |
| PACER Login: | mw0036 | Client Code: | 041332-0354-09479 |
| Description: | Docket Report | Search Criteria: | 1:08-cv-00161-MGC |
| Billable Pages: | 1 | Cost: | 0.08 |

EXHIBIT 4

LEXSEE 2005 U.S. DIST. LEXIS 3630

**GEORGE E. LASTRA and CHRISTOPHER LASTRA, Plaintiffs, - against - WEIL, GOTSHAL & MANGES LLP, Defendant.**

**03 Civ. 8756 (RJH) (RLE)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 3630*

**March 7, 2005, Decided
March 8, 2005, Filed**

**DISPOSITION:**     [*1] Plaintiffs' motion for jury trial denied.

**COUNSEL:** For George E. Lastra, Christopher Lastra, Plaintiffs: George E. Lastra, Bronx, NY.

For Weil, Gothsal & Manges, LLP, Defendant: Mark A Jacoby, Weil, Gotshal & Manges, New York, NY.

**JUDGES:** The Honorable Ronald L. Ellis, United States Magistrate Judge.

**OPINION BY:** Ronald L. Ellis

**OPINION**

**I. INTRODUCTION**

Before the Court is *pro se* plaintiffs' motion to request a jury trial, pursuant to *Rule 38(b), Federal Rules of Civil Procedure. Pro se* defendant Weil, Gotshal & Manges LLP ("Weil") opposes plaintiffs' motion on the grounds that plaintiffs waived their right to a jury trial because their demand is untimely. *See* Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Jury Trial Demand ("Def. Mem.") at 1; *FED.R.CIV.P. 38(d)*. For the following reasons, plaintiffs' motion is **DENIED.**

**II. BACKGROUND**

Plaintiff George E. Lastra ("G. Lastra"), by his attorney, Sanford A. Kutner ("Kutner"), initiated this action on November 5, 2003. On January 21, 2004, G. Lastra served Weil with a summons and complaint alleging discrimination against G. Lastra [*2] in violation of *Title VII of the Civil Rights Act of 1964.* Affidavit of Adam K.

Grant in Support of Defendant's Opposition to Plaintiffs' Motion of Jury Trial Demand ("Grant Aff.") at P2. No demand for a jury trial was made. **Id.** On February 18, 2004, an amended complaint, adding Christopher Lastra ("C. Lastra") as a plaintiff, and also alleging retaliation under Title VII of the Civil Rights Act of 1964, was served on Weil. Grant Aff. at P3, Exh. A. As in the initial complaint, no demand for jury trial was made. **Id.** Neither the amended complaint nor proof of service was filed with the Clerk of the Court. Weil served a copy of its answer upon plaintiffs on March 5, 2004, and filed the answer with the Court on March 8, 2004, respectively. Grant Aff. at P4, Exh. B.

On March 15, 2004, the parties, through their counsel, signed a joint pretrial report pursuant to *Federal Rules of Civil Procedure 26(f)*, which was so-ordered by Judge Howell on March 18, 2004. The report expressly states "Jury Trial not Requested." Grant Aff. at P5, Exh. C. at P2(g)(i). By letter dated August 5, 2004, plaintiffs informed the Court that Kutner would [*3] no longer be representing them in this action, and requested a jury trial in this action. Plaintiffs' Reply Memorandum of Law to Defendant's Memorandum of Law in Opposition to Plaintiffs' Notice of Motion for Jury Trial Demand ("Pl. Reply Mem."), Exh. A. On August 24, 2004, Kutner moved to be relieved as counsel of record, and on September 24, 2004, plaintiffs filed a notice that they would be appearing *pro se*. The Court granted Kutner's motion on September 27, 2004, and ordered plaintiffs to file their amended complaint, which had not previously been filed, within ten days of the order. On October 6, 2004, plaintiffs filed and served an amended complaint, which was substantially identical to the one previously served on defendant on February 18, 2004. Defendant re-served and re-filed its answer on October 20, 2004.

Plaintiffs filed a notice of motion for jury trial demand on December 3, 2004, and on December 20, 2004, G. Lastra filed an affirmation in support of plaintiffs' motion for jury trial.

## II. DISCUSSION

### A. *Federal Rules of Civil Procedure 38(b) and 39(b)*

Pursuant to *Rule 38(b) of the Federal Rules of Civil Procedure* [*4] , parties to an action must demand a jury trial within ten (10) days of service of "the last pleading directed to such issue." *FED.R.CIV.P. 38(b).* The Rule "embodies the equitable principles of reasonable reliance . . . and adequate notice . . .," *Rosen v. Dick, 639 F.2d 82, 94 (2d Cir. 1980)*, and thereby ensures that the parties and the court know early on in the litigation who the factfinder will be. *See Berisford Capital Corp. v. Syncom Corp., 650 F. Supp. 999, 1001 (S.D.N.Y. 1987).* A party who fails to serve and make such demand within the designated time period waives his right to a jury trial as to all issues in the general area of dispute. *FED.R.CIV.P. 38(d); Cascone v. Ortho Pharmaceutical Corp., 702 F.2d 389, 391 (2d Cir. 1983); Lanza v. Drexel & Co., 479 F.2d 1277, 1310 (2d Cir. 1973)* (en banc). "A waiver by failure to make a timely demand is complete even though it was inadvertent and unintended and regardless of the explanation or excuse." *Washington v. New York City Bd. of Estimate, 709 F.2d 792, 798 (2d Cir. 1983)* [*5] (citation omitted). However, the right to demand a jury trial is revived where the original complaint is subsequently amended, but only where new issues are presented. *Lanza, 479 F.2d at 1310.* The Second Circuit has interpreted the concept of new issues to mean "something more than the evidence offered and the legal theories pursued, although these are the pertinent factors." *Rosen, 639 F.2d at 94.* The concept encompasses an inquiry as to whether the amendment changes "the character of the suit," or the ultimate issue for decision. *Id. at 96; see also Virgin Air, Inc. v. Virgin Atlantic Airways, 144 F.R.D. 56, 58 (S.D.N.Y. 1993)* (a "new issue" requires a factual determination to be made by the jury that falls outside the matrix of fact already covered in the pleadings," and "addition of a new party does not revive a jury trial demand."); *Printers II, Inc. v. Professionals Publishing, Inc., 596 F. Supp. 1051, 1052 (S.D.N.Y. 1984)* (service of an amended answer that does not introduce new issues does not extend the time for serving a jury demand, and failure to make such [*6] demand by the prescribed deadline constitutes a waiver). There is no dispute that a jury trial demand was not filed in this action as required by *Rule 38.*

When a party fails to demand a jury trial pursuant to *Rule 38*, the court nonetheless has discretion to order a jury trial. *FED.R.CIV.P. 39(b)* Exercise of this discretion, however, is strictly limited to where there has been a "showing beyond mere inadvertence." *Noonan v. Cunard Steamship Co., 375 F.2d 69, 70 (2d Cir. 1967)* (holding that mere inadvertence in failing to make a timely jury demand is not sufficient for the court to exercise its discretion under *Rule 39(b)*). This limitation applies even to *pro se* plaintiffs. *Washington, 709 F.2d at 798* ("unintentional or unknowing failure of all litigants to comply with *Rule 38* are dealt with equally."); *Jones v. Hirschfeld, 2003 U.S. Dist. LEXIS 10370, 2003 WL 21415323, at *6 n.21 (S.D.N.Y. June 19, 2003)* (noting that defendant in the action was not *pro se* at the time he waived his jury trial right and even if he were, the liberal standard afforded *pro se* litigants does not extend to requests [*7] for jury trial, although notification of waiver is necessary to them).

In the instant case, plaintiffs have not shown that the failure to demand a timely jury trial was the result of more than mere inadvertence. On the contrary, the joint pretrial report, signed by the parties and so-ordered by the Court, reflects an intentional decision by the parties not to make such demand, despite plaintiffs' claims that their attorney signed the report and waived their right to jury trial without their consent. Moreover, plaintiffs' amended complaint filed on October 6, 2004, is substantially identical to the amended complaint served upon defendant on February 18, 2004. Thus, plaintiffs did not revive their right to a jury trial, which was waived in March 2004.

### B. *Federal Rule of Civil Procedure 6(b)(2)*

Under *Rule 6(b)(2)*, a Court has discretion to enlarge the time in which a party is required to act, upon a showing of excusable neglect. *FED.R.CIV.P. 6(b)(2).* The Second Circuit has found that excusable neglect within the meaning of *Rule 6(b)(2)* may apply in the context of a plaintiff's failure to timely [*8] demand a jury trial. *Raymond v. IBM Corp., 148 F.3d 63 (2d Cir. 1998).* In **Raymond,** the Court held that "mere inadvertence, without more, *can* in some circumstances, be enough to constitute 'excusable neglect' justifying relief under *Rule 6(b)(2)*," and affirmed the district court's decision to grant plaintiff's late jury demand where untimeliness was the result of mere inadvertence and submissions for summary judgment by both parties, as well as the court's summary judgment opinion, suggested the parties' assumption that a jury would ultimately hear the case. *Id. at 66-67* (emphasis in original). The requirement that any neglect be excusable serves as a necessary limitation to deter parties from freely ignoring deadlines with the expectation of receiving relief under this rule. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993); see also Landau v. Nat'l R.R. Passenger Corp., 97 F.R.D. 723, 725 (S.D.N.Y. 1983)* ("There is

much to be said in favor of rigid adherence to deadlines. If such rules are too lightly set aside, they fail [*9] to serve their intended purposes. A line down the middle of a highway must be clearly and certainly identifiable."). The inquiry is . . . 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond, 148 F.3d at 66 (quoting Pioneer, 507 U.S. at 395 (1993)).*

In this action, plaintiffs ask the Court to find excusable neglect because their former attorney failed to follow their orders to make a demand for jury trial. Affirmation in Support of Notice of Motion for Jury Trial Demand ("Pl. Aff.") at 1-3. They claim that Kutner waived plaintiffs' right to a jury trial without their consent, and therefore, they should not be prejudiced for these "unforseen, uncontrollable circumstances beyond [their] knowledge, consent and/or control." Pl. Reply Mem. at 4 (emphasis in original). The Court finds, however, that plaintiffs have not demonstrated excusable neglect to support their motion to file an untimely demand for jury trial.

Plaintiffs insist they told Kutner [*10] on "numerous" occasions, from the initiation of this action through the date they dismissed him as their attorney, that they wanted a jury trial, and that Kutner assured them a demand for jury trial had been made. Affirmation in Support of Plaintiffs' Reply Memorandum of Law to Defendant's Memorandum of Law in Opposition to Notice of Motion for Jury Trial Demand ("Pl. Reply Aff.") at PP2, 4; Pl. Reply Mem. at 2. In addition, plaintiffs claim defendant and Kutner colluded in waiving their jury trial right because defendant drafted the joint pretrial report, which expressly states that the parties do not request a jury trial. Pl. Reply Aff. at P4. Finally, plaintiffs allege that the Court advised them in September and November 2004 that their right to jury trial had not been waived. None of plaintiffs' contentions support a finding of excusable neglect for purposes of *Rule 6(b)(2)*.

First, as evidence of their "numerous" communications to Kutner of their "urgency and concern" about a jury trial, plaintiffs' submit merely two (2) e-mails they sent to him in July 2004, five months after the deadline for to demand a jury trial had passed. Affirmation in Support of Notice of Motion for Jury [*11] Trial Demand ("Pl. Aff."), Exh. A. Moreover, plaintiffs' contention that they repeatedly communicated to Kutner their desire to have a jury trial suggests that plaintiffs did not believe that a jury trial had ever been requested.

Second, plaintiffs' allegation that Kutner colluded with defendant to waive plaintiffs' jury trial right because defendant drafted the joint pretrial report does not constitute fraud or violation of some fiduciary duty by an attorney to his client. It is not uncommon for one party to draft a document such as pretrial order for both parties' signature.

Finally, the Court did not advise plaintiffs that their right to a jury trial had not been waived.

Plaintiffs' contentions and evidence neither demonstrate extraordinary circumstances that would excuse them from their attorney's actions, nor do they constitute excusable neglect for purposes of *Rule 6(b)(2)*. Although, as plaintiffs point out, defendant has made no particular showing that plaintiffs acted in bad faith in making the late jury demand, nor has it argued that it will be prejudiced by the delay, *see* Pl. Aff. at 4, these factors do not excuse plaintiffs' failure to demonstrate excusable [*12] neglect. In this action, plaintiffs were represented by counsel when a jury trial should have been demanded pursuant to *Rule 38*, and their counsel signed a joint pretrial order specifically rejecting a jury trial. Cf. *Ptaszek v. YMCA Ret. Fund, 2004 U.S. Dist. LEXIS 16880, 2004 WL 1900332, at *2-3 (S.D.N.Y. Aug. 24, 2004)* (finding excusable neglect where plaintiff, appearing *pro se* at the time she initiated her action, inadvertently failed to demand a jury trial). Thus, even plaintiffs' request for a jury trial by letter to the Court on August 5, 2004, was untimely and unexcused for late filing. A party voluntarily chooses its attorney, and therefore, may not avoid that consequences of that freely selected agent's acts or omissions. *Carter v. United States, 717 F. Supp. 188, 190 n.2 (S.D.N.Y. 1989).* Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence. *Chira v. Lockheed Aircraft, Corp., 634 F.2d 664, 666-67 (2d Cir. 1980); Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F. Supp. 2d 430, 436-37 (S.D.N.Y. 2002).* [*13] Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.

## III. CONCLUSION

Upon consideration of the entirety of the circumstances and the equities in this matter, plaintiffs' motion is **DENIED**.

**SO ORDERED this 7th day of March 2005**

**New York, New York**

**The Honorable Ronald L. Ellis**

**United States Magistrate Judge**

FOCUS - 3 of 41 DOCUMENTS

**SEA CARRIERS CORPORATION, Plaintiff, -against- EMPIRE PROGRAMS INC. and ROBERT A. MARTIN, Defendants.**

**04 Civ. 7395 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 7812*

**January 26, 2007, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by *Sea Carriers Corp. v. Empire Programs, Inc., 2007 U.S. Dist. LEXIS 36670 (S.D.N.Y., May 17, 2007)*

**PRIOR HISTORY:** *Sea Carriers Corp. v. Empire Programs, Inc., 2006 U.S. Dist. LEXIS 83843 (S.D.N.Y., Nov. 20, 2006)*

**COUNSEL:** [*1] For Plaintiff: BECKER MEISEL LLC, Eisenhower Plaza II, Livingston, NJ.

For Defendants: LAW OFFICES OF ALLAN H. CARLIN, New York, NY, Attorneys for Plaintiffs, By: ALLAN H. CARLIN, ESQ.

**JUDGES:** Sweet, D.J.

**OPINION BY:** Sweet

**OPINION**

*Sweet, D.J.,*

Defendants Empire Programs, Inc. ("Empire") and Robert A. Martin ("Martin") (collectively, the "Defendants") have moved under *Rule 38, Fed. R. Civ. P.,* to strike the jury demand of plaintiff Sea Carriers Corporation ("Sea Carriers"). For the reasons set forth below, the motion is granted.

*Prior Proceedings*

Sea Carriers filed its complaint on September 16, 2004, alleging six claims: (1) breach of contract with respect to an alleged oral joint venture agreement between Sea Carriers and Empire (the "Joint Venture Agreement"); (2) breach of an implied covenant of good faith and fair dealing arising from Empire's denial of the Joint Venture Agreement; (3) breach of fiduciary duty based upon Empire's denial of the Joint Venture Agreement; (4) declaratory relief entitling Sea Carriers to participate in any recoveries by Empire relating to the alleged joint venture; (5) the imposition of a [*2] constructive trust with respect to any recoveries by Empire relating to the alleged joint venture; and (6) an accounting. *See* Complaint, PP 30-48.

In April 2006, Sea Carriers agreed to add Martin as a defendant in this action, and by stipulation which was so or on April 14, 2006, leave was granted to the plaintiff to serve an amended complaint which was served on or about May 1, 2006.

Except for dropping the sixth cause of action for an accounting as alleged in the complaint, the claims asserted in the amended complaint with Martin as an additional defendant are virtually identical to those of the original complaint.

On May 11, 2006, the Defendants served an answer to the amended complaint by mail, denying its essential allegations. No demand for a jury trial was made by either party on any of the issues until May 22, 2006, when Sea Carriers served its jury demand.

The instant motion to strike that demand was marked fully submitted on August 30, 2006.

*Discussion*

**1. *The Right to Demand a Jury Trial Was Waived***

Where, as here, an amended pleading covers the same "general area of dispute" as was covered in the original pleading, the filing of an amended [*3] complaint does not revive the right to demand a jury. *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc., 75 F. Supp. 2d 242, 245 (S.D.N.Y. 1999); see also Swan Brewery Co. Ltd. v. U.S. Trust Co. of New York, 143 F.R.D. 40, 44 (S.D.N.Y. 1992) (citing Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973); Rosen v. Dick, 639 F.2d*

*82, 94-96 (2d Cir. 1980); Royal Am. Mgrs., Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (2d Cir. 1989); White v. McGinnis, 903 F.2d 699, 703 n.8 (9th Cir.), cert. denied 498 U.S. 903, 111 S. Ct. 266, 112 L. Ed. 2d 223 (1990))* ("An amended or supplemental complaint does not, however, revive the right to demand a jury trial either as to factual issues already fully discussed in the original pleadings, or as to new legal theories based on facts previously pleaded." (internal citations omitted)).

The claims asserted in the amended complaint are identical to those of the original complaint, except that they refer to an additional party, Martin. Therefore, the Plaintiff waived its rights to a jury trial with respect to all issues in this action by failing to demand a jury trial [*4] within ten days of service of the answer to the original complaint. *See Rule 38(b), Fed. R. Civ. P.* The addition of parties does not change the underlying claims or the nature of the relief desired and, therefore, does not revive plaintiff's right to a jury trial. *See, e.g., Tuff-N-Rumble Mgmt., Inc., 75 F. Supp. 2d at 246* (quoting *Sunenblick v. Harrell, 145 F.R.D. 314, 317 (S.D.N.Y. 1993)).*

In *Virgin Air, Inc. v. Virgin Atlantic Airways, Ltd., 144 F.R.D. 56 (S.D.N.Y. 1992),* the court likewise rejected a jury demand that was made after an additional defendant, Virgin Enterprises, was added to the action by amendment, stating, with respect to the allegations of the amended complaint, that:

> The essence, if not the exact language, of the allegations is the same. The only material difference, as discussed below, is that they are made against Virgin Enterprises in the Amended Complaint. . . .

The Court of Appeals has strongly indicated that the addition of a new party does not revive a jury trial demand.

> We have held that even an amendment to the complaint revives the right [*5] to demand a jury "only if the amendment changes the issue," and we are doubtful that the mere addition of codefendants one year after expiration of [the party's] time to demand a jury trial revived its previously waived jury trial rights.

State Mutual Life Assurance Company of America v. Arthur Andersen & Co., 581 F.2d 1045, 49 (2d Cir. 1978) (citation omitted). In a more recent decision the Court of Appeals for the Fifth Circuit held that the addition of a party to a counterclaim did not create new issues of fact. *Daniel International Corporation v. Fischbach & Moore, Inc., 916 F.2d 1061, 63-64 (5th Cir. 1990).* In light of these decisions, Virgin Air's contention that it is entitled to a jury trial of the fraud claim because of the addition of a new party is rejected.

*Virgin Air, Inc., 144 F.R.D. at 59; accord Gamboa v. Med. Coll. of Hampton Roads, 160 F.R.D. 540, 543 (E.D. Va. 1995)* (citing *Sunenblick, 145 F.R.D. 314); Freire v. Koehring Co., 89 Civ. 0221 (CSH), 1994 U.S. Dist. LEXIS 7345, 1994 WL 256743, at *3 (S.D.N.Y. June 3, 1994).*

### 2. The Rule 39(b) Application is Denied

In [*6] its opposition to the Defendants' motion, Sea Carriers has sought to rely on *Rule 39(b), Fed. R. Civ. P.,* to grant a jury trial. Sea Carriers has cited the Fifth Circuit's rulings in *Swofford v. B&W, Inc., 336 F.2d 406, 409 (5th Cir. 1964)* and *United States v. Unum, 658 F.2d 300, 303 (5th Cir. 1981)* in support.

As noted by this Court in *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd., 92 Civ. 9417, 1995 U.S. Dist. LEXIS 7323, 1995 WL 322156 (RWS) (S.D.N.Y. May 26, 1995),* however, the Second Circuit applies the strict, rigorous test of *Noonan v. Cunard Steamship Co., 375 F.2d 69 (2d Cir. 1967),* with respect to *Rule 39(b):*

> The liberality with which 39(b) discretion is to be exercised has varied from circuit to circuit. This Circuit has set forth a restrictive view. *See Printers II, Inc. v. Professionals Publishing, Inc., 596 F. Supp. 1051, 1052 (1984).* In *Noonan v. Cunard, 375 F.2d 69 (2d Cir. 1967),* the court held that precedent interpreting judicial discretion in exercising 39(b) authority limited a judge's authority 'to determining whether the moving party's showing [*7] beyond mere inadvertence is sufficient to justify relief . . .' *Id. at 70* . . . .

* * *

2007 U.S. Dist. LEXIS 7812, *

District courts . . . have continued to apply the strict holding of *Noonan* to cases that originated in federal court, as this one did. *See Sait Electronics, S.A. v. Schiebel, 846 F. Supp. 17, 18 (S.D.N.Y. 1994)* (denying motion to grant untimely demand for jury trial when movant failed to make a showing beyond mere inadvertence); *Alvarado v. Santana-Lopez, 101 F.R.D. 367, 368 (S.D.N.Y. 1984)* (A[T]he rigid rule discussed in *Noonan* remains the rule in this circuit for non-removed cases . . . A); *Printers II, Inc. v. Professionals Publishing, Inc., 596 F. Supp. 1051, 1052 (1984)* (declining to exercise discretion and permit untimely jury demand in a case originating in federal court, thus not falling within the *Higgins'* exception).

*Evvtex Co., Inc., 1995 U.S. Dist. LEXIS 7323, 1995 WL 322156, at *1-2.*

The analysis in *Evvtex* applies here, where there is little question of Sea Carriers= inadvertence in failing to file a demand for a jury trial with regard to the issues covered in Sea Carriers' original complaint. [*8] Accordingly, Sea Carriers' reliance on *Federal Rule of Civil Procedure 39(b)* is unavailing.

### Conclusion

As in *Noonan*, "[t]here is, of course, not the slightest reason to doubt that a judge is quite as able as a jury to make a fair determination" of the issues in this case. *375 F.2d at 72.* Accordingly, for the reasons set forth above, the Court declines to exercise its discretion to permit the untimely jury demand pursuant to *Federal Rule of Civil Procedure 39(b)* and Defendants' motion to strike the jury demand as untimely pursuant to *Federal Rule of Civil Procedure 38* is granted.

LEXSEE 145 F.R.D. 314, 317

**ROBERT SUNENBLICK d/b/a UPTOWN RECORDS, Plaintiff, v. ANDRE HARRELL d/b/a UPTOWN RECORDS and MCA, INC., Defendants.**

**91 Civ. 6606 (LAP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*145 F.R.D. 314; 1993 U.S. Dist. LEXIS 228; 25 Fed. R. Serv. 3d (Callaghan) 646*

**January 11, 1993, Decided
January 11, 1993, Filed**

**COUNSEL:** [**1] For Plaintiff: Hopgood, Calimafde, Kalil, Blaustein & Judlowe, Stephen B. Judlowe, James M. Rhodes, Jr., Steven J. Moore.

For Defendant: Pryor, Cashman, Sherman & Flynn, Stephen F. Huff, Diedre Byrne.

**JUDGES:** Preska

**OPINION BY:** LORETTA A. PRESKA

**OPINION**

[*316] Memorandum and Order

LORETTA A. PRESKA, U.S.D.J.,

By letter briefs, the plaintiff moved for leave to file a jury demand with his amended complaint and to have the entire action tried before a jury, and the defendant moved to bifurcate the liability and damages portions of the case. For the reasons set forth below, plaintiff is hereby granted permission to amend his complaint to add new parties but is denied permission to have all issues tried to a jury. Defendants' motion to bifurcate is denied.

*Background*

Plaintiff Sunenblick is the founder of Uptown Records, a small, independent recording company which produces and distributes jazz recordings under the "UPTOWN" label. Plaintiff has used the "UPTOWN" trademark in connection with jazz recordings since 1980, and the mark has been registered with the State of New York since 1981.

Defendant Andre Harrell ("Harrell") through Andre Harrell, Inc., provides a wide range of entertainment products under the mark [**2] "UPTOWN." Defendant

MCA, Inc. ("MCA") is a large corporation which conducts business in many segments of the entertainment industry. MCA currently distributes Harrell's recordings under the UPTOWN mark.

Plaintiff alleges that he first became aware of Harrell's use of the trademark "UPTOWN" on musical recordings when plaintiff was negotiating with MCA regarding a proposed contract and was told that MCA already had an "UPTOWN" label under contract.

*Jury Demand*

When plaintiff first commenced this action against Harrell and MCA, he did not demand a jury trial. Plaintiff contends that only after discovery was commenced did he learn (i) of the role of MCA Records, Inc. and Andre Harrell, Inc. in the alleged infringement; and (ii) that after plaintiff notified MCA of the infringing conduct, MCA expanded the use of the "UPTOWN" trademark so that a claim of reverse confusion became appropriate. Defendants have agreed to allow plaintiff to file an amended complaint adding the two new corporate defendants and the allegations of reverse infringement but argue that the plaintiff has waived his rights to a jury trial. Plaintiff argues that the addition of these new parties and his new claim [**3] of reverse confusion revive the right to a jury trial.

*Rule 38(a)* preserves the right to a trial by jury as provided for the in the *Seventh Amendment to the Constitution*. *Fed. R. Civ. P. Rule 38(a)*. Any party may demand a jury trial on an issue by serving a demand therefor on all other parties to the action no later than 10 days after the service of the last pleading "directed to such issue"; such demand may be indorsed on a pleading. *Fed. R. Civ. P. 38(b)*. A party who fails to serve a jury demand in the manner specified by *Rule 38* is deemed to have waived its right to a trial by jury on the issues

145 F.R.D. 314, *; 1993 U.S. Dist. LEXIS 228, **;
25 Fed. R. Serv. 3d (Callaghan) 646

framed by the pleadings at that juncture. *Fed. R. Civ. P. 38 (d); See Richardson Greenshields Securities v. Mui-Hin Lau, 693 F. Supp. 1445, 1458 (S.D.N.Y. 1988)*. Once the ten-day period has passed, the "parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint." *Berisford Capital Corp. v. Syncom Corp., 650 F. Supp. 999, 1001 (S.D.N.Y. 1987)*. Despite the waiver of the trial by jury, the court in its discretion "upon motion" may order a [**4] trial by jury. *Fed. R. Civ. P. 39*. However, the district court's discretion has been sharply limited "to determining whether the moving party's showing beyond mere inadvertence is sufficient to justify relief." *Richardson Greenshields Securities v. Mui-Hin Lau*, No. 84 Civ. 6134 (KMW); 1991 WL 1225241, *5 (S.D.N.Y. 1992), *quoting, Noonan v. Cunard Steamship Co., 375 F.2d 69, 70 (2d Cir. 1967)*.

In this Circuit, amendments to the pleadings revive the right to a jury trial [*317] only if the amendments involve new issues or change the original issues. *Berisford, 650 F. Supp. at 1001*, *citing, Lanza v. Drexel & Co., 479 F.2d 1277, 1310*. The presentation of a "new issue" means more than the presentation of a new legal theory of recovery. *Rosen v. Dick, 639 F.2d 82 (2d Cir. 1980); Bulk Oil (USA) Inc. v. Sun Oil Trading Co., 584 F. Supp. 36, 43 (S.D.N.Y. 1983)*. New issues sufficient to revive the right to a jury trial are not raised if the amended pleadings concern the same "general area of dispute" as was raised in the original pleadings. [**5] *Lanza v. Drexel, 479 F.2d at 1310*.

Here, plaintiff alleges that it is only since discovery has commenced that he has learned of MCA's plan to expand its use of the trademark "UPTOWN" and that it is this expanded use of the mark that is Sunenblick's basis for a claim of reverse confusion. Plaintiff's original complaint alleges trademark infringement, false designation and unfair competition, and the proposed amended complaint merely adds allegations of reverse confusion, not even an additional claim. The issues raised in the proposed amended complaint involve the "same general area of dispute" as the original complaint and merely add an alternative legal theory upon which relief could be granted. As such, the amendment is insufficient to revive plaintiff's right to a jury trial. *Rosen v. Dick*, 693 F.2d at 94; *Lanza v. Drexel, 479 F.2d 1277 at 1310*.

Similarly, the addition of the new defendants does not revive plaintiff's right to demand a jury trial. The parties plaintiff seeks to add are all related to the parties already named in this action and, indeed, have been participating in discovery. This [**6] mere addition of parties does not change the underlying claims or the nature of the relief desired and, therefore, does not revive plaintiff's right to a jury trial. *See Richardson Greenshields Securities v. Mui-Han Lau, 693 F. Supp. at 1458*.

## Bifurcation

The court "in furtherance of convenience or to avoid prejudice" may in its discretion bifurcate a trial concerning issues of liability and damages. *Fed. R. Civ. P. 42(b); Katsaros v. Cody, 744 F.2d 270 (2d Cir. 1984)*. While it may be proper in certain instances to bifurcate a trial, "separation of issues is not the usual course that should be followed." *Keyes Fibre Co. v. Packaging Corp. of America, 763 F. Supp. 374 (N.D. Ill. 1991), quoting, Response of Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307 (5th Cir. 1976); see* Advisory Committee Notes to the *Fed. R. Civ. P. 42(b)*. Bifurcation is appropriate where, for example, deciding the issue of liability first might save the court from having to rule on complex issues of damages. *American Home Products Corp. v. Johnson & Johnson, 111 F.R.D. 448 (S.D.N.Y. 1986)*. [**7]

Defendant asserts that MCA will have to develop a computer program to isolate profit information on goods and services provided under the "UPTOWN" mark. While the Court is not insensitive to the costs of litigation, this does not appear to be an overly burdensome task to impose on defendant, and there is no guarantee that at the close of the liability portion of the trial that this task would not have to be performed. Additionally, disposition of this matter might be considerably delayed and the cost multiplied if, at the close of the liability portion of the trial, the parties only then commenced discovery concerning damages.

In the present case, defendant has failed to demonstrate that judicial economy will be maximized or that cost to the parties will be minimized by bifurcating the liability and damage portions of this case or that defendant will be prejudiced by failure to bifurcate. *See Organic Chemicals, Inc. v. Carroll Products, Inc., 86 F.R.D. 468, 469 (W.D. Mich. 1980)*.

## Conclusion

Plaintiff's request for leave to add a jury demand to the amended complaint is denied. Plaintiff shall serve his amended complaint within ten days of the issuance [**8] of this memorandum and order. Defendant's motion to bifurcate is denied. The [*318] parties shall appear for a status conference in this matter on January 28, 1993 at 11:00 a.m., in courtroom 36.

SO ORDERED:

Dated: New York, New York

January 11, 1993

Loretta A. Preska, U.S.D.J.